[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs herein have appealed from an assessment of damages resulting from a certificate of taking for properties owned by them and located on a private road off of Field Point Road in the Belle Haven district of Greenwich, Connecticut.
There are two separate takings, the first being identified in the present setting as docket number CV90 01136117S and known as D.W. Properties Ltd., Trustee v.Commissioner of Transportation. The second is for a parcel consisting of three lots contiguous to one another and to the property identified as D.W. Properties Ltd., Trustee and identified as CV90 01136118S D.W. Properties Ltd. v.Commissioner of Transportation.
The properties, all of which are contiguous to one another, also abut the private roadway which is owned in part by all of the abutting owners. The Certificate of Taking and Notice of Condemnation in the case of D.W.Properties Ltd., Trustee, CV90 0113617S, consists of an easement for a temporary work area for the purpose of constructing a retaining wall coincidental with the construction of the I-95 truck weighing station in Greenwich. There are two areas involved, one an area of CT Page 1646 0.43 acres more or less designated as Work Area 1, the other being 0.071 acres more or less and designated as Work Area 11. This is a temporary work easement for a period of one year to terminate automatically unless terminated sooner by the Commissioner. The second Notice and Taking is for a temporary work area easement identified as D.W. Properties Ltd., Trustee, CR90 011361217S, and consists of some 0.205 acres more or less.
The purpose of the easement is to allow passage of equipment and materials over the private roadway previously mentioned and also a portion of the property owned by D.W. Properties Ltd., Trustee to allow for the construction of a retaining wall in conjunction with the construction of a truck weighing station on I-95 in the Town of Greenwich.
The plaintiffs have deemed inadequate the assessment of damages as levied by the Commissioner of Transportation and as a result thereof have filed the appeals which are presently before the court. Pursuant to statutory authority these appeals have been referred to the undersigned as a judge trial referee.
In accordance with the referral, the undersigned has deemed it appropriate in the interest of judicial economy to hear both appeals together. To this end, the court has heard the testimony of various witnesses, including real estate appraisers, for both the plaintiffs and the defendants. It has examined the various exhibits submitted by the parties and has also examined the briefs submitted. In addition, the court has visited the premises including the truck weighing station and has viewed the conditions existing after the completion of the project.
"The constitution provides that no property shall be taken for a public use without just compensation. Const. Of Conn. Article 1 So. 11. We have said that just compensation means a fair equivalent in money for the property taken as nearly as its nature will permit; Waterbury v. Platt Bros. Co.,76 Conn. 435, 440, 56 A. 856; New Haven Water Co. v.Russell, supra, 368; and the market value is ordinarily the measure of compensation, although this is not necessarily so. State v. Suffield and Thompsonville Bridge Co.,82 Conn. 460, 467, 74 A. 775. . . . In United States v.Nuhaut, 153 F. 520, 82 C.C.A. 470 . . . the court pointed CT Page 1647 out (p. 521) that the question was to be decided upon equitable principles. . . . `The paramount law intends that the owner shall be put in as good condition pecuniarily by a just compensation as he would have been if the property had not been taken. . . . The question of just compensation contemplated by the constitution is more an equitable contemplated by the constitution is more an equitable also said (p. 524): `The primary question of course is just compensation and this means full equivalent for the property taken.'" Winchester v. Cox, 129 Conn. 106, 114.
"When, as in the present case, only part of a tract of land is taken for the public use `just compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. In such a situation damages are measured by determining the difference between the market value of the whole tract as it lay prior to the taking and the market value of what remained thereafter." (Internal citations omitted). Brown v. Ives, 171 Conn. 231, 236.
"In a condemnation case, the referee is more than a trier of fact or an arbiter of differing opinions of witnesses. `He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge, and his viewing of the premises.'" Bowenv. Ives, supra, 239; Birnbaum v. Ives, 163 Conn. 12, 21.
The court finds the highest and best use of the property to be for residential development the purpose for which the properties were acquired. This is bolstered by the fact that the properties are located in the very exclusive Belle Haven section of Greenwich and based on its zoning classification could only be developed as residential.
Lots 3, 5 and 6 were acquired by D.W. Properties, Ltd. by an executor's deed from the Estate of Ella Jeanette Mead dated July 15, 1987 and recorded in the Greenwich Town Clerk's Office. The court finds their before taking value to be $930,000 as of October 16, 1990 the date of taking. This is the acquisition price and the testimony of plaintiffs' appraiser indicates that the value of the CT Page 1648 property from July 15, 1987 to October 16, 1990 has remained stable.
The total area taken consists of 0.114 acres more or less. The easement is for a temporary work area for the purpose of constructing a retaining wall coincidental with the construction of a truck weighing station on I-95. The actual easement is over the private roadway and permitted the passage of equipment and materials so as to allow access to the actual work site. The easement was to terminate automatically on October 16, 1991 unless terminated sooner. In fact, the work was completed in ten months. During the construction, several trees on the adjacent Trustee property were cut down exposing all of the properties to an increase in noise coming from the weighing station over and above the steady noise emanating from the Thruway itself.
In arriving at an after taking value the court has taken into consideration damages that have arisen from the increase in noise; the limitation on the use of the private right of way over a period of ten months as well as the damage to the right of way during its us by the Department of Transportation.
The court finds the noise as it affects the four parcels is peculiar to these parcels and is over and above the noise that the general neighborhood might be subjected to. The noise factor as it related to Lots 3, 5 and 6 is a great deal less, however, than the noise inflicted on the trustee parcel. While it might appear to be infinitesimal as to these three lots, one must remember that this is an exclusive and expensive area and any one interested in acquiring any of the lots and being aware of the construction activity would consider such a factor in arriving at a determination of value. The one percent figure found by the plaintiffs' appraiser the court finds appropriate and, based on a value of $936,000.00, this would amount to $9300.00.
In determining what deprivation of the use of the private right of way occurred over the ten month period, the court does not agree that the taking for that period was complete and total and that the plaintiffs were deprived completely from any use of their property. While the state may have had almost total control over the right of way the CT Page 1649 taking is for a temporary easement only and so long as the plaintiff does not interfere with the easement he can make any other use of the property that he would legally be permitted to do. Alemany v. Commissioner of Transportation,215 Conn. 437, 441, 442. It is obvious, however, that the plaintiff is extremely limited in what use he can make of the right of way. With these facts in mind, the court finds that during the time of the temporary easement, the plaintiffs were limited to a nominal use of their property and, based on this conclusion, the state's use of the right of way is found to be 90%. During the time period, such truck activity, would reduce the value of the respective lots in the eyes of a prospective purchaser. Plaintiffs' appraiser finds a reduction in value of .045%. With this the court agrees. Based on the above, the court finds the damage inflicted upon the plaintiff by the limiting of his use of the right of way to 10% amounts to $37,288.00.
Finally, the plaintiff claims the physical damage to the right of way to be 100% and is asking for damages amounting to the cost of replacement. Again, the court cannot agree. Based on its own observation, the court adopts a 50% depreciation. Taking 11,550 square feet and a cost of $2.00 a square foot, 50% would amount to $11,550.00.
Considering all of the above, the court finds the damages in the D.W. Properties Ltd. Parcel, CV90 0113618S, to amount to $58,138.00, thus the court finds the after taking value to be $871,812.00.
In the case of D.W. Properties Ltd., Trustee, CV90 0113617S. the court finds the before taking value to be $310,000 as of October 16, 1990. In arriving at this figure, the court has considered the figures of defendant's appraiser with a slightly higher figure. Considering the fact that the plaintiffs' principal acquired three other lots adjacent to this parcel for $930,000.00 and considering further the testimony of plaintiffs' appraiser that prices in the area had remained stable from the date of purchase to the date of taking, the court makes its finding of before taking value at $310,000.00.
The temporary easement in the case was not only for a right of way over the abutting private road, but also over a portion of plaintiffs' property so as to allow the defendant CT Page 1650 an opportunity to construct a retaining wall coincidental with the construction of the I-95 weighing station. In order to do so, it became necessary for them to remove several mature trees and underbrush exposing the property to the Connecticut Thruway, I-95. The construction of the weigh station brought about an increase in noise that would be apparent to any would-be purchaser, as well as the unsightliness of a wire fence and drainage areas covered by stone and requiring constant maintenance by the property owner so as to avoid any erosion.
The defendant's appraiser used the same value for the before and after, assuming that before the easement had expired the property was to be returned to its prior condition. When he was shown photographs of the property in its after condition, he indicated that under these circumstances he might have considered some damage to have been incurred. The court is of the opinion that there has in fact been damages to the remainder in addition to the actual taking.
In assessing the damage to the remainder, the plaintiffs' appraiser factored in a 20% reduction in value due to noise. At the time the court viewed the premises it also visiting the weighing station while it was in operation. While there was noise over and above what would normally emanate from the highway, the court is of the opinion that it did not reach the magnitude of 20% as expressed by the appraiser. Based on the court's own observation, it would reduce that figure to 15%.
As far as the easement itself is concerned, it lasted for a period of ten months. The plaintiffs' contention was that the use of the easement was total and prevented the plaintiff from making any use of the property. While the use of the right of way was considerable, the court cannot say that it was total. Consistent with its zoning classification, the plaintiff could make whatever use of the property he so desired so long as it was not inconsistent with the defendant's use of its easement. The court does, however, find that the defendant's use was substantial. It therefore finds from its own observation and the testimony elicited that the use of the easement consisted of a 90% use. CT Page 1651
The court has found the before taking value to be $310,000.00. To this the court applies a 15% reduction in value attributed to the noise emanating from the weighing station. For the removal of trees and foliage along with placement of an unsightly wire fence and drainage areas covered with stone along with the opening of an unsightly vistage in an exclusive residential area the court assigns a 5% loss factor, a total 20% loss 15% plus 5% amounts to $62,000.00 giving us an after taking value of $248,000.00.
As for the use of the easement itself covering a period of ten months, the court assesses the damage at $20,666.00. This is accomplished by deducting from the before value a 15% noise depreciation factor and a 5% factor for physical damage to the property and applying to this figure the ten month use of the property, multiplying the same by a 10% interest figure.
The total damages the court finds to be $82,666.00 rounded to $82,700.00. As a result, the after taking value is $227,300.00.
In summary, in the case of D.W. Properties Ltd., CV90 0114618S, the court finds the damages to be $58,138.00.
In the case of D.W. Properties Ltd., Trustee, CV90 0114617S, the court finds the damages to be $82,700.00.
As for interest on the amounts over and above what was paid into court, a risk-free investment made by a reasonably prudent investor would be the rate of interest prevailing on seven year treasury notes on October 16, 1990. The court takes judicial notice that such rate on October 16, 1990 was 8.20%. This rate shall be applied for the period of October 16, 1990 to the date herein.
In CV90 0113617, the court finds a reasonable appraisal fee to be $5,775.00.
In CV90 0113618, the court finds a reasonable appraisal fee to be $2,925.00.
Judgment may enter accordingly.
The Court CT Page 1652
Curran, JTR.